NATIONAL HOME LIFE ASSURANCE COMPANY, Appellee,

v.

LaRuth PATTERSON, Executrix of the Estate of Patsy Jatonii Adair; Patsy Shannon Phelps; Monty Loday Phelps; Judson Wayne Adair, Appellants,

and

Joann Adair, Appellee.

LIFE GENERAL SECURITY INSURANCE COMPANY, Appellee,

v.

LaRuth PATTERSON, Executrix of the Estate of Patsy Jatonii Adair; Patsy Shannon Phelps; Monty Loday Phelps; Judson Wayne Adair, Appellants,

and

Joann Adair, Appellee.

Nos. 64361, 64362.

Court of Appeals of Oklahoma, Division No. 3.

Sept. 8, 1987.

Rehearing Denied Oct. 6, 1987.

Certiorari Denied Dec. 8, 1987.

Richard J. Goralewicz, Oklahoma City, for appellants.

W. Samuel Dykeman, Oklahoma City, for appellee Joann Adair.

BAILEY, Judge:

This case comes on for review of the trial court's orders denying Appellants' motions for summary judgment filed in two interpleader actions, and granting judgment for Appellee. Decedent Patsy Jatonii Adair (Decedent) was married to Delbert Wayne Adair. Into the marriage Decedent brought two children of a previous marriage, Monty Loday Phelps and Patsy Shannon Phelps, Appellants. Into the marriage, Husband Delbert brought one child, Appellee Joann Adair. Of the marriage, one child was born, Judson Wayne Adair, Appellant. Decedent never adopted Joann, but left a Will, nominating her husband as primary beneficiary of her estate, and designating Decedent's three children and Husband's child, Joann, as residual beneficiaries, to take in equal shares.

On Christmas day, 1982, Decedent was murdered by her husband, who was later convicted of the crime, and is serving a life sentence. At her death, Decedent was covered by two insurance policies, one from National Home Life Insurance Company, and one from Life General Security Insurance Company. The National Home Life policy provided that if the primary beneficiary under the policy fails, then the proceeds should be divided equally among the insured's children, and if none survive, then to be paid to the executor or administrator of the insured's estate. The Life General policy had a similar provision, but directed that if the primary beneficiary could not take, then the proceeds would be paid to the owner of the policy, if living, otherwise to the executor of the estate of the owner.

Oklahoma has enacted a "slayer statute" found at 84 O.S.1981 § 231, which disqualifies a primary beneficiary of an insurance policy, where the beneficiary is convicted of murder of the insured. Recognizing the potential and conflicting terms of Decedent's Will, the insurance policies, and the statute, Life General and National Home Life interpleaded the proceeds of their respective policies into the Oklahoma County District Court in separate actions. The insurers were later dismissed from the actions, and the trial courts, on motions for summary judgment, directed that the insurance proceeds be deposited into estate of Decedent and distributed according to Decedent's Last Will and Testament. The Decedent's Will directed distribution among the three natural children and Joann Adair, Decedent's step-child who was never adopted by Decedent. These appeals ensued, and were consolidated for purposes of this decision.

All parties to these appeals agree that under 84 O.S.1981 § 231, husband, as convicted slayer of Decedent, is disqualified from taking the proceeds of either insurance policy. The parties also agree that the insurance policies and the proceeds flowing therefrom are not ordinarily matters of probate, but rather are matters of contract, and the insurance policies are to be construed in accordance with the law of contract. 15 O.S.1981 § 151 et seq.; *Lester v. Sparks*, 583 P.2d 1097 (Okl.1978). All provisions of a contract should be given effect. 15 O.S.1981 § 157. The determinative issue in this appeal then devolves to resolution of the question, whether the trial courts erred as a matter of law in directing the proceeds of the two insurance policies to be deposited into the estate for distribution according to the Last Will and Testament of Decedent.

■ We thus turn our attention to the express contractual provisions of Decedent's insurance policies. Under the National Home Life policy (Case No. 64,361), the proceeds of the insurance policy are to be paid to the primary beneficiary; if the primary beneficiary fails, then the proceeds are to be paid in equal shares to the insured's children. Under § 231, Decedent's husband, having been convicted of murder of the insured, may not participate in the distribution of the insurance proceeds. Thus, and under the alternative beneficiary clause of the insurance contract, the policy proceeds are to be distributed to the "children" of the insured in equal shares. Although we have found no Oklahoma authority directly on point, we believe that an unadopted stepchild is neither "issue" nor a "child" under the policy so as to qualify for a share of the proceeds. *Cf.*, 84 O.S.1981 § 213 (to "issue" or "child" of issue); 23 AmJur.2d, Descent and Distribution, § 63 (Stepchildren not "children" under intestate succession); *Estate of Smith*, 49 Wash.2d 229, 299 P.2d 550, 63 A.L.R.2d 299 (1956) (Stepchild does not inherit from stepparent as heir at law); *Hines v. First Nat'l. Bank and Trust Co. of Oklahoma City*, 708 P.2d 1078 (Okla.1985) (Adopted child is "issue" under will). Thus, and as the specific provision of the National Home Life policy provided for distribution of the insurance proceeds to the children of the Decedent/insured, the trial court erred in ordering the proceeds of the National Home Life policy deposited into Decedent's estate for distribution according to the Last Will and Testament of the Decedent. The Decedent specifically contracted for the benefits of the insurance policy, and as the policy dictates the manner in which the proceeds shall be distributed, we hold that all of the provisions of the insurance contract should be given their express effect. 15 O.S.1981 § 157, *supra*.

■ Similarly, and as to the Life General Insurance policy (Case No. 64,362), the terms of that policy provided that the proceeds of the policy should be paid to the primary beneficiary; if the primary beneficiary could not take, the policy directed the proceeds to be paid to the owner of the policy, if living, otherwise to the personal representative of the insured's estate. Under the specific provision of the policy, therefore, the trial court properly directed the payment of the insurance proceeds to the personal representative.

By this construction of the insurance contracts, Decedent's will, and our slayer statute, we have in this opinion specifically given effect to the clear wording of the insurance contracts by allowing the proceeds to pass according to the terms of the policies. This construction would also give effect to Decedent's Will, as residue of the estate, other than the affected insurance proceeds, would be distributed according to the Will. And we have considered 84 O.S. 1981 § 231, which we believe does not apply under the facts of this case, as we believe the clear provisions of Decedent's Will take precedence over the "descent and distribution" language of the slayer statute. The competing interests of the insurance contracts, Decedent's Will, and our slayer statute, in our opinion, compel the construction as set forth herein.

The orders of the trial courts are therefore AFFIRMED IN PART, REVERSED IN PART and this cause REMANDED WITH INSTRUCTIONS to enter an order or orders directing the payment of the National Home Life policy directly to the three natural children of Decedent, Patsy Shannon Phelps, Monty Loday Phelps, and Judson Wayne Adair. The proceeds of the Life General policy shall be paid to the personal representative of the estate for distribution under Decedent's Will as ordered by the trial court.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.

HANSEN, P.J., and HUNTER, J., concur.